Dodd vs. State of Arkansas.

---

## Dodd v. State of Arkansas.

1. CRIMINAL LAW: *Indictment: Burglary and Larveny may be joined in same.* If one feloniously enter a house in the night time with intent to steal, he is guilty of burglary though he does not accomplish the theft. If he completes the theft he is guilty of a further offense, and may, by statute, be indicted and punished for both burglary and larceny; and he may be charged with the two offenses separately, or jointly in different counts in the same indictment.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Lea and W. A. Compton*, for appellants.

*Henderson*, Attorney-General, *contra*.

ENGLISH, C. J. :

The indictment in this case contains two counts, the first count charging F. C. Dodd with burglary, and the second count charging him with larceny.

The substance of the first count is as follows :

"The grand jury of Pulaski county, etc., accuse F. C. Dodd of the crime of burglary, committed as follows, viz. : The said F. C. Dodd, on the 17th day of December, 1877, in the county, etc., aforesaid, and at the hour of eight o'clock of the night of said day, the stable of David Lowe, there situate, then there feloniously and burglariously did · break and enter with intent the goods and chattels of said David Lowe in said stable then and there being, then and there feloniously and burglariously to steal, take and carry away ; said goods and chattels being of the value of $200 ; against the peace," etc.

The second count accused the defendant of the further crime of larceny, committed as follows :

"The said F. C. Dodd, on the 17th day of December, 1877, at etc., two geldings of the value of $100 each, the property of David Lowe, being found as mentioned in the first count herein, did then there feloniously and burglariously steal, take and carry away, against the peace," etc.

The defendant was tried on the plea of not guilty, and the jury found him guilty as charged in the first count of the indictment, and fixed his punishment at three years imprisonment in the penitentiary ; and they also found him guilty upon the second count, and fixed his punishment at five years in the penitentiary.

He moved for a new trial, which the court refused, and sen-

tenced him in accordance with the verdict. He took a bill of exceptions, setting out the evidence, the instructions of the court, the questions of law reserved, and prayed an appeal, which was allowed by one of the judges of this court.

If a man feloniously enter a house, in the night time, with intent to steal, he is guilty of burglary, though he may not accomplish the theft. If he completes the theft, he is guilty of a further offense, and may, by statute, be indicted and punished for both burglary and larceny; and he may be charged with the two offenses separately, or jointly in different counts of the same indictment, as in this case. *Gantt's Digest*, secs. 1349, 1351.

The evidence on the trial that appellant broke and entered the stable of David Lowe in the night time, and took the two horses, is not direct, but circumstantial.

Lowe resided on Capital Hill, Little Rock, Between sun down and dark, on the 17th day of December, 1877, he locked his two carriage horses in his stable, and left home. On his return, about 9 o'clock at night, he found the stable door had been broken open, and the horses were gone. The appellant, who seems to have been a stranger to the witnesses, was seen not far from the stable on that day. Witness, *Maxwell*, lived about ten miles from Little Rock, on the road to Benton. About 11 o'clock of the night on which Lowe found his stable door broken, and his horses gone, a man riding one horse and leading another, passed Maxwell's house, and made inquiry about movers, saying he was trying to overtake them. The moon was shining, and witness could see the color of the horses but did not know the man. On the next day Lowe started in pursuit. He found that one of his horses had been swapped to witness *Henderson*, who resided near Benton, and about twenty-two miles from Little Rock. Henderson went on with him to Hot Springs, where they found appellant in possession

of the horse that Henderson had swapped to him, and Lowe's other horse, and he was arrested.

Upon these facts, we cannot say that there was no evidence to warrant the jury in finding that appellant broke and entered the stable of Lowe in the night time, and stole his horses.

The appellant asked the court to give four instructions to the jury, all of which the court gave except the second, which is as follows:

"The naked possession of stolen property unaccompanied by other circumstances tending to show that the defendant committed the offense charged, is a mere circumstance from which a presumption of guilt may arise, and is easily rebutted by any circumstances tending to prove a contrary conclusion."

The court instead of giving this instruction in the language in which it was asked, said to the jury in a general charge:

"Upon the question of possession of stolen property, the court charges the jury that the possession of property recently stolen, if unexplained, raises a presumption against the defendant that he is the guilty party. That this presumption is stronger or weaker according to the circumstances of each particular case, and that the jury in determining the force of it must take into consideration all the circumstances surrounding the case, the kind of property, the length of time intervening between the taking and the possession charged to be guilty. They are to say whether under all the circumstances of this case they are satisfied beyond a reasonable doubt of the defendants guilt," etc.

This, upon the facts proven, is not a case of naked possession of stolen property unaccompanied by other circumstances tending to show guilt, as assumed in the instruction asked for appellant. The charge of the court was more appropriate upon the evidence, and fair to the accused. *3 Greenleaf, Ev.*, sec. 31-2-3.

Dodd vs. State of Ar ansas.

The appellant did not attempt to account for his possession of the recently stolen horses.

He failed to prove that he had any local habitation, was engaged in any business, or had any means of purchasing or trading for a pair of carriage horses. He was at Capital Hill on the day preceding the night the horses were missing, and a few days after he was followed to Hot Springs, where he was found in possession of one of the horses, and it was proven that he had traded the other to Henderson on his way out.

The horses were locked in the stable between sun down and dark. The door was found broken, and the horses gone at 9 o'clock at night. Two hours after, at 11 o'clock, he passed Maxwell's house ten miles out, with the horses, for no doubt, from the facts in evidence, it was he that passed there at that hour.

It is not probable that the stable door was broken open, and the horses taken out in the day light. At that season of the year (17th of December) it was night by six o'clock. If he had taken the horses from the stable before night, it is probable that he would have been farther away, on his flight, than Maxwell's house, which was only ten miles off, by 11 o'clock at night

But it was the province of the jury, not ours, to weigh all of the facts and circumstances in evidence. They found him guilty on both counts of the indictment, and we cannot say, as matter of law, that there was no evidence to warrant the verdict.

Affirmed.